# LOEVY + LOEVY

311 N. Aberdeen Street
Chicago, Illinois 60607
(312) 243-5900
www.loevy.com

April 2, 2025

**Via CM/ECF**
United States District Court
Southern District of New York
Honorable Judge P. Kevin Castel
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

*Handwritten annotation:* There presently no stay of discovery. The Helbiz shall fully respond to Plaintiff's letter of April 2, 2025 by April 8. Plaintiff's reply by April 10. The Court will rule thereafter. SO ORDERED /s/ [signature] USDJ 4-3-25

RE: *Barron et al., v. micromobility, et al.*, Case No. 20-cv-4703: Letter Motion to Compel Discovery or for a Conference

Dear Judge Castel:

I write pursuant to Rule 3.B of your Individualized Practices to address several discovery disputes between the Plaintiffs, who I represent, and the Helbiz Defendants (micromobility.com Inc. (f/k/a/ Helbiz Inc.), Salvatore Palella, Lorenzo Pellegrino, Giulio Profumo, Jonathan Hannestad and Justin Giuliano). We request an informal conference pursuant to Local Rule 37.2 or, alternatively, that you enter an order compelling Defendants to comply with our discovery requests.

As explained in detail below, the parties are at impasse. Plaintiffs issued their discovery requests in December 2024 and January 2025, and have engaged in multiple conferences and email discussions with Defendants attempting to get their compliance. Defendants produced only the slightest trickle of paper documents, no e-discovery and have still not provided the documents from their accountants subject to this Courts' February 27th Order. Dkt. 337.

Having dragged the process out for as long as they could, and with Plaintiff announcing that they are moving to compel, Defendants took a new tack. They announced that they were unilaterally terminating discovery on the grounds that they intend to file a (premature) motion for summary judgment.[1] Defendants' motion, flawed on its face, is a transparent and desperate attempt to avoid producing plainly discoverable materials that no doubt support Plaintiffs' claims. Defendants cannot be allowed to continue this campaign of avoidance and so Plaintiffs respectfully move the Court for three forms of relief needed to get the case on track:

1) Admonish the Helbiz Defendants regarding their obligation to diligently search their files, electronic and non-electronic, for responsive documents and set a 30-day deadline for them to

---

[1] Plaintiffs will separately respond in opposition to the Helbiz Defendants' 3/31/25 letter motion (Dkt. 338) seeking leave to file motions for summary judgment and to stay of discovery.

Case 1:20-cv-04703-PKC   Document 340   Filed 04/03/25   Page 2 of 8
Case 1:20-cv-04703-PKC   Document 339   Filed 04/02/25   Page 2 of 8

April 2, 2025                                                   Page 2 of 8

produce all documents they possess that are responsive to Plaintiffs First and Second Requests for Production (except Requests 14 &15);[2]

    2) Adjudicate the party's disputes regarding the appropriate search terms to be used for Defendants in electronic discovery; and

    3) Compel the production of all non-privileged documents Plaintiffs subpoenaed from accounting firms Gallant Corporate Solutions LLC (Gallant), Lester C. Ceasar, and CohnReznick LLP or, in the alternative, compel Mr. Palella to provide Plaintiffs with a list of documents in possession of these third-parties and his basis for objecting to their production.

Plaintiff explains the course of dealings leading up to the motion and the need for the requested belief as follows.

### I.    Background

The Court may already be familiar with the basic facts of this case, *see* Dkt. 335 at 2–8 (Plaintiffs' response to Helbiz Defendants' motion to quash third-party subpoenas), but Plaintiffs offer the following brief background of the claims at issue and the procedural history of the litigation to-date. The case has been pending since 2020 and has gone to the Second Circuit on appeal twice. Both appeals resulted in remands in favor of the Plaintiffs. *See Barron v. Helbiz, Inc.*, No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021); *Barron v. Micromobility.com Inc.*, No. 24-36, 2024 WL 5290852 (2d Cir. Aug. 23, 2024).

Finally, late last year, discovery commenced and the Court has set a cutoff of October 14, 2025. There are many crucial pieces of evidence that are in the exclusive control of the Helbiz Defendants.

#### A.   **The Helbiz Defendants' delay and obstruct discovery**

Plaintiffs served their initial requests for production and interrogatories on the Helbiz Defendants almost four months ago on December 10, 2024. *See* Exs. 1 (First Set of Requests for Production to Defendant Micromobility.com), 2 (First Set of Requests for Production to Individual Helbiz Defendants), & 3 (First Set of Interrogatories to all Defendants). Plaintiffs served a second set of requests for production on January 27, 2025. *See* Exs. 4 (Second Set of Requests for Production to Defendant Micromobility.com) & 5 (Second Set of Requests for Production to the individual Helbiz Defendants).

Defendants' deadline to respond to Plaintiffs' First Requests for Production was January 9, 2025. When Defendants did not produce any documents on that date, Plaintiffs inquired about their failure to produce and requested to meet and confer. Mr. Heim represented that his clients would begin producing documents soon and Plaintiffs agreed to defer any production requiring an e-discovery vendor until after the February 3rd settlement conference before Judge Moses provided that the Helbiz Defendants provide plaintiffs with an estimate of the time needed to complete e-discovery once it began (they never did). *See* Ex. 6 at 2–3 (Email chain between counsel for Plaintiffs and the Helbiz Defendants).

---

[2] Defendants objected to Request 14 & 15 as premature and Plaintiffs are not moving on them at this time.

Case 1:20-cv-04703-PKC   Document 340   Filed 04/03/25   Page 3 of 8
Case 1:20-cv-04703-PKC   Document 339   Filed 04/02/25   Page 3 of 8

April 2, 2025                                    Page **3** of **8**

The Helbiz Defendants did not produce any documents the week of January 13th, but the parties did confer and the Helbiz Defendants committed to conducting a reasonable search and to producing relevant non-privileged documents in response to all of Plaintiffs' first requests, aside from those numbered 14 and 15, which Defendants asserted were premature. *See* Ex. 6 at 4–5 (emails confirming the agreements reached at the meet and confer). The understanding was that Defendants would still produce, on a rolling basis, any documents in their possession that did not require e-discovery, such as their personal financial records, employment records, social media history, etc. *See* Ex. 6 at 2–3, 5.

The Helbiz Defendants did produce a small number of documents related to their present financial condition pursuant to Judge Moses's instructions in the lead-up to the settlement conference, but they did not separately produce any documents responsive to Plaintiffs' First or Second Requests for Production. On February 7th, Plaintiffs followed up with Mr. Heim regarding the status of the Helbiz Defendants' production and proposing search terms for Request No. 24 in Plaintiffs' First Set of Requests for Production, which Mr. Heim had solicited. *See* Ex. 6 at 3. Mr. Heim responded that he'd just spoken with an e-discovery vendor and would "be in a position to begin making a rolling production on Wednesday," February 12th. Ex. 6 at 3. Mr. Heim also stated that he did not object to Plaintiffs' proposed search terms. Ex. 6 at 1.

On February 12th, Defendant micromobility.com Inc. produced a mere 31 pages of documents and Defendant Pellegrino produced 20 pages of documents. Nothing was provided from the remaining Helbiz Defendants including, glaringly, Defendant Palella. Counsel for the Helbiz Defendants represented that they were "continuing to gather responsive documents." *See* Ex. 7 at 3 (Email thread between all counsel regarding discovery).

Aside from being miniscule, this handful of documents was clearly incomplete even as to its limited scope—it includes documents referencing attachments that were not included, text threads beginning in the middle, and cropped and undated screenshots.

Plaintiffs immediately raised these issues with the Helbiz Defendants. *See* Ex. 7 at 2. Mr. Heim stated that this initial production was merely "copies of documents . . . maintained in the desk files" of his clients, and that "[c]omplete copies of the documents with attachments will be produced from the electronic files, which we are working on and will make productions on a rolling basis." *Id.*

When Plaintiffs inquired about the status of the bulk of the production, Mr. Heim stated that Giulio Profumo had no access to his prior work email or company documents and that Justin Giuliano had not located any responsive documents. Ex. 7 at 1. Notably missing was any representation at all about the discovery efforts of the two principal architects of the HelbizCoin scam: Salvatore Palella and Jonathan Hannestad.

Thereafter, Plaintiff met and conferred twice more in an attempt to obtain compliance, on Wednesday February 26th and Wednesday March 5th (in response to the Court's order discussed below). At each conference, Plaintiffs inquired about the status of Mr. Palella's and Mr. Hannestad's discovery efforts and counsel for the Helbiz Defendants would not confirm that either had made any efforts at all to search for responsive documents. Further, despite indicating in early February (a month after their discovery was due) that they were finalizing selection of an e-discovery vendor, which they claimed was a necessary first step before they can produce any emails, the Helbiz Defendants have refused to disclose any further information about their progress and when the

Case 1:20-cv-04703-PKC   Document 340   Filed 04/03/25   Page 4 of 8
Case 1:20-cv-04703-PKC   Document 339   Filed 04/02/25   Page 4 of 8

April 2, 2025                               Page 4 of 8

discovery will be produced. The small February 12th production remains all that the Helbiz Defendants have produced to date.

### B. The Defendants renege on the parties' agreement regarding third-party subpoenas to Mr. Palella's accountants and financial advisor

Pursuant to the Court's February 27th order (Dkt. 337) adjudicating Mr. Palella's motion to quash Plaintiffs' subpoenas on CohnReznick, Lester S. Ceasar and Gallant Corporate Services, the parties conferred on March 5th. At this conference, Plaintiffs understood the parties to have agreed that Mr. Heim and Mr. Galdston would confer with the subpoenaed parties and return to Plaintiffs with a list of what documents they possessed that were responsive to Plaintiffs' original subpoenas and a proposal for what of those documents Mr. Palella agreed were produceable.

From there, the parties would negotiate the production and bring any disputes to the Court. At least some remaining dispute seemed likely because Plaintiffs asserted many grounds of relevance (for example, the accountant's transfers of cryptocurrency to QCP capital on Palella's behalf) while Defendants were trying to limit it to whether he reported capital gains.

After not hearing back for two weeks, counsel for Plaintiffs inquired about the results of the outreach defense counsel had agreed to conduct and for a list of the documents. Ex. 10 at 6 (email thread between counsel for Plaintiffs and Helbiz Defendants regarding outstanding discovery issues). In response, Mr. Galdston stated:

> "We have conferred with Mr. Palella's third-party financial services providers and confirm that they have no additional relevant, responsive documents to produce. Specifically, there is no capital gains/losses schedule or supporting documentation related to any transactions in HelbizCoin or other cryptocurrency."

Ex. 10 at 5. Defendants refused—in writing and during the March 26th conference—to respond to Plaintiffs follow-up questions and their request for the list of documents in the accountants' possession. *See* Ex. 10 at 1. This leaves Plaintiffs blind to what is in the accountants' files and therefore unable to either agree to a subset of documents or provide evidence for the Court to decide Defendants' objections.

### C. The parties fail to agree on e-discovery search terms

After Defendants indicated at the March 5th conference that they were expecting Plaintiffs to propose more search terms before they would engage in any e-discovery searches, Plaintiffs sent a list of additional proposed search terms to the Helbiz Defendants. Plaintiffs again did not hear back for two weeks regarding these terms (or the status of the third-party subpoenas), so we followed up again. Ex. 10 at 5–7.

As to the search terms, Defendants rejected the majority calling them "impractical" but with no legitimate grounds for the self-serving conclusion. Ex. 10 at 4–5. They also took issue with Plaintiffs use of a Boolean root expander ("!") to capture emails about crypto wallet addresses. The addresses are essential random alphanumeric strings, 42 characters long, beginning "0x." Therefore, Plaintiffs used the term "0x!" to pick up emails about cryptocurrency accounts. *See* Ex. 11 (spreadsheet with Plaintiffs' proposed search terms and Defendants' objections). Plaintiffs' position is that any emails discussing cryptocurrency are reasonably likely to be relevant to this action,

Case 1:20-cv-04703-PKC    Document 340    Filed 04/03/25    Page 5 of 8
Case 1:20-cv-04703-PKC    Document 339    Filed 04/02/25    Page 5 of 8

April 2, 2025                                    Page **5** of **8**

particularly since Defendants have never said they were engaged in any other crypto-related business. *See* Ex. 10 at 2. Plaintiffs again offered to meet and confer, which they attempted to do when Defendants announced that they were unilaterally terminating discovery.

### D. The Helbiz Defendants outright refuse to participate in discovery

It was at the March 26th conference that defense counsel announced Defendants were unilaterally terminating discovery in this case because they have decided to move for summary judgment. *See* Ex. 10 at 1 (email from Plaintiffs' counsel Julia Rickert to opposing counsel memorializing 3/26 conference). Despite Plaintiffs' efforts to make headway on the substance of the parties' disputes, Defendants stonewalled at this conference and stated that they were not willing to even discuss discovery issues further until this Court adjudicated their not-yet-filed motion to stay discovery pending the disposition of their also yet-to-be-filed premature motion for summary judgment.

### II.   Argument

Plaintiffs' claims have survived two rounds of motions to dismiss and two interlocutory appeals. Now, more than four years into the case, it is time for Defendants to produce the discovery they possess. However, Defendants are doing everything they can to keep the information buried.

Defendants cannot legitimately continue to deny Plaintiffs the discovery they seek. "Though the burden of demonstrating relevance is on the party seeking discovery," *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016), "[i]f a party objects to discovery requests, that party bears the burden of showing why discovery should be denied," and "[s]pecifically, the resisting party must show how, 'despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.'" *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87–88 (S.D.N.Y. 2016) (quoting *Sokol v. Wyeth, Inc.*, No. 07-cv-8442, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008).

### A. The Helbiz Defendants must promptly and meaningfully engage in discovery

Plaintiffs have made every effort to obtain Defendants' basic compliance with their Rule 26 obligations to produce relevant documents and information without seeking this Court's intervention. Unfortunately, Defendants stalled for months with false assurances of compliance and now are completely refusing to engage in discovery. Defendants are also refusing to say whether they have searched at all after using self-created delays associated with e-discovery. This is plainly improper. *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 289 (S.D.N.Y. 2024) (describing four months of discovery noncompliance as a length that "warrants the harshest of sanctions, including dismissal or default").

Nor do Defendants' boilerplate objections absolve them from their "discovery obligations includ[ing] production of documents that [they] had the right, authority, or practical ability to obtain." *United States v. Veeraswamy*, 347 F.R.D. 591, 602 (E.D.N.Y. 2024) (internal quotation omitted). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to

Case 1:20-cv-04703-PKC    Document 340    Filed 04/03/25    Page 6 of 8
Case 1:20-cv-04703-PKC    Document 339    Filed 04/02/25    Page 6 of 8

April 2, 2025                                                      Page **6** of **8**

disclose, answer, or respond," to discovery and justifies a motion to compel a party's compliance with Federal Rule 26(a). Fed. R. Civ. P. 37(4).

It is clear at this point that the Helbiz Defendants collectively, and Mr. Palella and Hannestad in particular, have failed to work in good faith to locate and produce the documents Plaintiffs have requested and are entitled to received.

A deadline is needed, and this Court should impose a short one, no more than thirty days. *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 357 (S.D.N.Y. 2023) (discussing the imposition of interim deadlines for discovery compliance in the face of a defendant's failure to comply with discovery on their own); *Black Love Resists In the Rust by & through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23, 31 (W.D.N.Y. 2019) ("Defendants must produce responsive documents in a text-searchable format on a rolling basis, with an initial production to be made no later than twenty (20) days from the date on which Plaintiffs provide a revised list of search terms.").

### B. The Plaintiffs' proposed search terms are reasonably calculated to turn-up relevant documents

As explained, Defendants refused to confer on ESI search terms during the March 26th meeting, despite Plaintiffs' repeated attempts to do so constitute a "genuine attempt to resolve the discovery dispute through non-judicial means." *Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-cv-6835, 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021) (quotation omitted). The issue is thus ripe for adjudication. *See Senat v. City of New York*, 255 F.R.D. 338, 340 (E.D.N.Y. 2009).

ESI search terms, like any other discovery request, need only be "reasonably calculated to lead to relevant evidence that might not be captured if they were excluded." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013). Plaintiffs have proposed, at Defendant's request, a reasonable list of terms that meets this standard.

Defendants' objection to the use of a Boolean expander is unfounded. They are asserting that Plaintiffs' proposals are "too generic" and not sufficiently "tied to the facts of the case." *See* Ex. 11. But the facts of this case are that the Helbiz Defendants, who do not claim to be primarily in the business of cryptocurrency, moved cryptocurrency among many wallets after obtaining it through fraud. Under these circumstances, any email discussing a crypto wallet is calculated to lead to the discovery of admissible evidence. Plaintiffs' "0x!" search term does that and that only. It covers the universe of wallets they may have used in the fraud as well as the fact that they may have abbreviated the 42-digit addresses.

Defendants' assertion that other crypto-related terms like "Ethereum," "ICO," "Coinbase," "Coinhub," "Cryptocurrency" should not be used is equally unfounded. These are relatively discrete terms, tied to the facts of this case and Defendants "have not quantified" their assertion that using these terms would be unduly burdensome "in terms of the number of documents subject to collection and review or the amount of time and manpower that would be reasonably required to comply with the requests." *Black Love Resists In the Rust by & through Soto v. City of Buffalo*, 334 F.R.D. 23, 29 (W.D.N.Y. 2019). And again, given that Defendant micromobility.com and the individual Defendants have never said they engaged in crypto-related business outside the scope of this fraud case, it seems likely that these terms would turn up primarily relevant documents.

Of course, it is not ideal for lawyers to design search terms without input from "those who wrote the emails," but Plaintiffs are in that position entirely because Defendants have refused to collaborate to refine the proposed terms. *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D.N.Y. 2009); *see also In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 662 (M.D.Fla.2007) ("[U]se of this technique must be a cooperative and informed process."). While "the best solution in the entire area of electronic discovery is cooperation among counsel," *William A. Gross Const.*, 256 F.R.D. at 136, counsel for Defendants has chosen to be uncooperative and even unprofessional. Under these circumstances, and to avoid further delay, the Helbiz Defendants should be ordered to begin e-discovery using the terms Plaintiffs have proposed.

### C. Defendants' failure to engage in the narrowing process contemplated by this Court's order regarding the accountant subpoenas must not be rewarded

After this Court ruled that "the concept of subpoenas on CohnReznick and Lester S. Ceasar, accountants, and Gallant Corporate Services, a financial advisor, has been shown by plaintiffs to fall within the permissible scope of Rule 26(a)," Dkt. 337, Defendants agreed to determine and report back on what documents were in the accountants' possession, custody or control. But they reneged. Instead of providing a list, Defendants reported back that—in their one-sided opinion—the accountants possessed nothing relevant and were unwilling to discuss the matter further.

For the reasons Plaintiffs have already submitted to the Court, the subpoenas are proper in their entirety. *See* Dkt. 335. To the extent Mr. Palella had an argument that some responsive documents in these third parties' possession were not relevant, the Court should either treat him as having waived or should enforce the subpoenas as a sanction for his disregard for this Court's order. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (noting that district courts have broad discretion to "select sanctions that are commensurate with the non-compliance such that they restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced and the evidence disclosed" (internal quotation omitted)). At a minimum, the Court should compel Mr. Palella to provide Plaintiffs with a complete and detailed list of all documents in possession of these third parties and his basis for objecting to the production of any portion of those.

### III.   Conclusion

The Helbiz Defendants' obstructive tactics and continued delays in a case that has already been pending for years must come to an end. For all the reasons given above, Plaintiffs ask the Court to hold an informal conference or, without a conference, to 1) admonish the Helbiz Defendants regarding their obligation to diligently search their files, electronic and non-electronic, for responsive documents and set a 30-day deadline for them to produce all documents they possess that are responsive to Plaintiffs First and Second Requests for Production (except Requests 14 & 15); 2) adjudicate the party's disputes regarding the appropriate terms to be searched for by the Defendants in electronic discovery; and 3) compel the production of the non-privileged documents Plaintiffs subpoenaed from accounting firms Gallant Corporate Solutions LLC (Gallant), Lester C. Ceasar, and CohnReznick LLP or, in the alternative, compel Mr. Palella to provide Plaintiffs with a list of documents in possession of these third-parties and his basis for objecting to their production.

April 2, 2025                                             Page **8** of **8**

                                        RESPECTFULLY SUBMITTED,

                                        s/ Michael Kanovitz
                                        One of counsel for Plaintiffs

                                        Michael Kanovitz (*pro hac vice*)
                                        Jon Loevy (*pro hac vice*)
                                        Julia Rickert (*pro hac vice*)
                                        Heather Lewis Donnell
                                        Anand Swaminathan
                                        Isaac Green (*pro hac vice*)
                                        LOEVY & LOEVY
                                        311 N. Aberdeen St., 3rd Floor
                                        Chicago, Illinois 60607
                                        (312) 243-5900
                                        mike@loevy.com

cc: All parties via CM/ECF