| Tarter Krinsky & Drogin LLP | OMNUM LAW APC |
| --- | --- |
| 1350 Broadway | 4350 Executive Drive, Suite 350 |
| New York, NY 0018 | San Diego, CA 92121 |

October 25, 2025

**VIA ECF**

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Barron et al. v. micromobility.com Inc. et al.*, Case No. 20-cv-04703-PKC

Dear Judge Castel,

      In compliance with this Court's Individual Practices in Civil Cases, § 1.A.iii., the next conference before the Court in this case is scheduled for November 5, 2025. The Micromobility Defendants respectfully request oral argument on the following three issues at or before the November 5 conference.

      **1.)    Plaintiffs' Motion to Quash the Rule 45 Subpoena to Non-Party Law Finance Group (ECF 400).** Defendants micromobility.com Inc., Salvatore Palella, Lorenzo Pellegrino, Giulio Profumo, Jonathan Hannestad and Justin Giuliano (the "Micromobility Defendants") respectfully submit this opposition to Plaintiffs' Motion to Quash ("Motion") the Rule 45 subpoena *duces tecum* to non-party Law Finance Group (the "Subpoena"). As set forth below, the Subpoena was timely served and seeks patently discoverable information that is relevant to Plaintiffs' pending class certification motion, particularly regarding numerous conflicts that disqualify Plaintiffs' chosen counsel from serving as class counsel. Plaintiffs' motion also is untimely, filed in the wrong District, and lacks standing. For all of the reasons detailed below, Plaintiffs' Motion should be denied.

      **2.)    The Micromobility Defendants' Request to Stay This Action for 60-Days to Permit Filing a Comprehensive Motion to Disqualify Loevy + Loevy as Putative Class Counsel.** The Micromobility Defendants also respectfully request that the Court stay this action for 60 days to permit their filing of a comprehensive motion to disqualify Loevy + Loevy as putative class counsel due to numerous fatal conflicts of interest and deficiencies arising from the action against Loevy + Loevy partners (and counsel in this action) Michael Kanovitz and Jon Loevy, captioned *Advanced Flower Capital, Inc., et al. v. Michael Kanovitz, et al.*, Case No. 1:25-cv-02996-PKC, also pending before this Court (the "*Advanced Flower Action*"). The *Advanced Flower Action* alleges that Mr. Kanovitz and Mr. Loevy engaged in a massive fraud and stole "tens of millions of dollars" by fraudulently diverting funds loaned for their cannabis businesses to other entities owned by Kanovitz and Loevy, including a $1 million payment by Loevy + Loevy to Law

1

Finance Group ("LFG"), which is the recipient of the Subpoena. As explained in detail below, LFG is a litigation funder that the Micromobility Defendants believe may have an undisclosed financial interest in the outcome of this action.[1]

**3.) The Micromobility Defendants' Alternative Request to Modify the Scheduling Order.** In the alternative, the Micromobility Defendants respectfully request a modification of the Civil Case Management Plan and Scheduling Order (ECF 313) (the "Scheduling Order") for good cause to provide for an extension to the deadlines by which the Micromobility Defendants must disclose their experts and file their opposition to class certification. The parties initially agreed to at least a 60-day extension (i.e., equivalent to the extension obtained by Plaintiffs in filing their class certification motion); however, Mr. Kanovitz subsequently reneged on his agreement after his request that the Subpoena be withdrawn was declined.

## I. Plaintiffs' Motion to Quash is Untimely, Filed in the Wrong District, and Lacks Standing

As a threshold matter, Plaintiffs' Motion should be denied as untimely because it was required to be filed by October 10, 2025, the original date for compliance specified in the Subpoena, and because it is filed in the wrong District. Plaintiffs' Motion should also be denied for the separate reason that Plaintiffs lack standing to bring this motion, as they purportedly have no personal interest in the information sought by the Subpoena. Rather, if anyone has standing to seek to quash, it would be LFG, Mr. Kanovitz, Mr. Loevy and Loevy + Loevy but none of them has sought relief. In fact, LFG failed to timely serve any response or objection to the Subpoena and made no joinder to Plaintiffs' (defective) Motion. All objections by any party with interest are waived.

The Subpoena was served on LFG on October 1, 2025 and required production of responsive documents on October 10, 2025 (i.e., within nine days) in the Northern District of California (or, if LFG preferred, in the Southern District of California) in accordance with Rule 45(a)(1)(iii). *See* Subpoena and Proof of Service attached as Exhibit A. While Rule 45 does not specify any time duration for compliance, courts generally look to whether the time provided is reasonable in light of the scope of the demands. *See, e.g., Am. Transit Ins. Co. v. Pierre*, Case No. 24-cv-0360 (RPK) (CLP), 2025 WL 2481528, at *3 (E.D.N.Y. Aug. 28, 2025); *see also* Fed.R.Civ.P. 45(d)(3)(A)(i). Here, nine days was reasonable given the limited number and narrow scope of requests, as detailed below. In any event, the reasonableness of the response deadline is not at issue and Plaintiffs (and Mr. Kanovitz, Mr. Loevy, and Loevy + Loevy) lack standing to challenge the time for compliance because they are not the recipient of the Subpoena. *See, e.g., In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.,* 319 F.R.D. 132, 135 (S.D.N.Y. 2016). Likewise, although counsel for LFG requested an extension to respond and was granted an additional two weeks as a professional courtesy, that extension did not apply to the Plaintiffs'

---

[1] The Micromobility Defendants' motion to disqualify Loevy + Loevy will also detail a litany of misconduct in this litigation by Mr. Kanovitz and Loevy + Loevy, including discovery violations and knowingly false statements to the Court.

2

Motion. Unlike LFG, Plaintiffs did not seek any extension to the deadline to file their Motion. Therefore, Plaintiffs' motion is untimely.

Plaintiffs also filed their Motion in the wrong District. A motion to quash a Rule 45 subpoena must be filed "in the district where compliance is required." *Reynolds v. City of Rochester*, No. 6:23-CV-06506 (FPG) (CDH), 2025 WL 1108191, at *2 (W.D.N.Y. Apr. 15, 2025) ("Federal Rule of Civil Procedure 45(d)(3) limits the power to quash or modify a subpoena to 'the court for the district where compliance is required.'), citing Fed.R.Civ.P. 45(d)(3)(A)-(B) and *JMC Rest. Holdings, LLC v. Pevida*, No. 14 CIV. 6157 WFK VMS, 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015) ("the court for the district where compliance is required is the proper venue for a motion to compel")). Here, the Subpoena required compliance in the Northern District of California.

For these reasons alone, the Motion should be denied. *Id*. (collecting and analyzing cases). Compliance should be compelled immediately.

## II. The Subpoena Seeks Highly Relevant Information

LFG is a litigation funder that lends money to law firms in exchange for a "risk" premium secured by the outcome of contingency fee cases. LFG describes itself as the "original U.S. litigation funder" with more than "three decades of experience funding U.S. claimants and law firms."[2] LFG provides funding to law firms secured by "litigation portfolios" (i.e., all pending cases of a law firm) and "single-case funding" (i.e., on a case-by-case basis). *Id*. Importantly, LFG does ***not*** purport to offer cannabis funding or cannabis industry related services.

The Subpoena seeks information that is relevant to numerous issues in this litigation, including the adequacy, fitness, and suitability of the Plaintiffs to serve as class representatives and Loevy + Loevy to serve as proposed counsel for the putative class. The Subpoena contains seven separate requests (one with subparts) generally seeking information regarding whether LFG has a financial interest in this action (either as standalone security or as part of "portfolio" lending with Loevy + Loevy) and whether a $1 million payment by Loevy + Loevy to LFG using stolen funds, as alleged in the *Advanced Flower Action*, is connected in any way to this action.

For example, the subpoena requests production of "[t]he agreement(s) pursuant to which LFG provides litigation financing, revolving credit, or any other support or resources to Loevy + Loevy" (Request No. 1) and "documents and communications concerning LFG's financial interest in the *Barron Action*, including any agreements which are secured, in whole or part, by an interest in the outcome of the *Barron Action*" (Request No. 4). These documents are indisputably relevant to potential conflicts of interest for Loevy + Loevy, Mr. Kanovitz and Mr. Loevy. The documents also are relevant to the credibility of Plaintiffs and their chosen counsel. *See*, *e.g.*, *Garcia De Leon v. New York Univ.*, No. 21-cv-05005 (CM), 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022) ("In deciding whether to certify a class and appoint class plaintiff and class counsel, the court 'may

---

[2] *See* https://www.lawfinance.com/ and https://www.lawfinance.com/about (last visited Oct. 25, 2025).

consider the honesty and trustworthiness of the named plaintiff.'"), quoting *Savino v. Comput. Credit*, 164 F.3d 81, 87 (2d Cir. 1998). "Such consideration includes 'an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit.'" *Id.*, quoting *Friedman-Katz v. Lindt & Sprungli (USA) Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) (internal citation omitted).

Indeed, throughout this action, the Micromobility Defendants have pursued discovery through document demands, interrogatories, and depositions inquiring, among other things: (i) whether any third party (e.g., a litigation funder such as Law Finance Group) has any financial interest in the outcome of this case; and (ii) whether Loevy + Loevy disclosed any such arrangements to the proposed class representatives or obtained their approval for such arrangement. *See*, *e.g.*, Plaintiffs' Amended Responses to the Micromobility Defendant's Second Request for the Production of Documents attached hereto as Exhibit B at p. 5. In each instance, Plaintiffs responded in the negative. The Micromobility Defendants are entitled to test Plaintiffs' (and the counsel's) representations on this subject matter through non-party discovery.

The Subpoena also seeks limited information related to the *Advanced Flower Action* that is also unquestionably relevant to the parties' claims and defenses in this action, particularly the adequacy and fitness of the proposed class representatives and class counsel. By way of background, Advanced Flower Capital, Inc. ("AFC"), a plaintiff in the *Advanced Flower Action*, is an institutional lender specializing in loans to cannabis industry operators. Mr. Kanovitz and Mr. Loevy apparently "own and control a network of cannabis companies." AFC alleges that it agreed to lend certain of their cannabis companies up to $75.4 million in 2021 to build cannabis facilities in New Jersey and Pennsylvania. AFC further alleges that Mr. Kanovitz and Mr. Loevy stole "tens of millions of dollars" that they "fraudulently diverted" to other entities they own, including Loevy + Loevy.[3] According to AFC, Loevy + Loevy allegedly then used those diverted funds to pay off $966,762.00 owed by Loevy + Loevy to Law Finance Group.

Given the allegation in the AFC action there are serious questions about the Plaintiffs' and Loevy + Loevy's compliance with discovery obligations and candor with the Micromobility Defendants and the Court. These issues are relevant to the Plaintiffs' adequacy and fitness to serve as class representatives. Whether Loevy + Loevy depend on third party funding agreements to finance this action also raises separate ethical considerations that are appropriately subject to discovery in this putative class action. As explained by the American Bar Association:

> 'Litigation funding' typically is structured as an investment by a funder on a non-recourse basis in a lawsuit or arbitration in exchange for an agreed return from the proceeds, or, in the case of funding of defendants, some other way of compensating the funder based upon the results of the lawsuit. The funds may be provided to a

---

[3] Importantly, Loevy + Loevy is not alleged to be a borrower or have any contractual relationship with AFC.

lawyer–including for a single case, a class action, or a portfolio of cases–or to the litigant.[4]

Third party funding arrangements raise numerous potential conflicts, particularly when "portfolio financing" is involved:

> [T]he possibility of tensions, and even concrete conflicts of interest, may arise if the lawyer or a single client begins to have difficulties with the funder involving one of a group of matters. 'It may even be that the law firm relies upon the funder for financing across a portfolio of matters, which can make it more difficult to avoid or manage perceived conflicts of interest where a disagreement arises between the funder and one of the funded clients in the portfolio.'

*Id.* at 6 (citation omitted).

Among other "best practices," the ABA recommends disclosure of any third party funding arrangements to clients. *Id.* at pp. 11-12. Moreover, the Association of the Bard of the City of New York Committee on Professional Ethics has issued Formal Opinion 2018-5, which provides: "[A] lawyer may not enter into a financing agreement with a litigation funder, a non-lawyer, under which the lawyer's future payments to the funder are contingent on the lawyer's receipt of legal fees or on the amount of legal fees received in one or more specific matters." Formal Opinion 2018-5: Litigation Funders' Contingent Interest in Legal Fees at pp. 1, 6. Indeed, many courts require disclosure of third-party litigation funding or others with a financial interest in the outcome of litigation. *See, e.g.*, Standing Order Regarding Third-Party Litigation Funding Arrangements (D. Del. Apr. 18, 2022); Civ. L.R. 7.1.1 (D.N.J. June 21, 2021); D. Ariz. L.R. 7.1.1; C.D. Cal. L.R. 7.1-1; N.D. Cal. L.R. 3-15; M.D. Fla. L.R. 3.03(a); N.D. Ga. L.R. 3.3(A)(2); S.D. Ga. L.R. 7.1.1; N.D. Iowa L.R. 7.1; S.D. Iowa L.R. 7.1; D. Md. L.R. 103.3(b); E.D. Mich. L.R. 83.4(b)(2); W.D. Mich. local Rule 7.1 form; D. Neb. local Rule 7.1 form; D. Nev. L.R. 7.1-1; E.D.N.C. L. Civ. R. 7.3(b)(2); M.D.N.C. local Rule 7.1 form; W.D.N.C. local Rule 7.1 form; E.D. Okla. local Rule 7.1 form; N.D. Okla. local Rule 7.1 form; W.D. Okla. local Rule 7.1 form; M.D. Tenn. L.R. 7.02; N.D. Tex. L.R. 3.1(c); W.D. Tex. L.R. CV-33(b)(3); W.D. Va. local Rule 7.1. form; W.D. Wisc. local Rule 7.1 form; 3rd Cir. L.R. 26.1.1(b); 4th Cir. L.R. 26.1(a)(2)(B); 5th Cir. L.R. 28.2.1; 10th Cir. L.R. 46.1(D)(1) & (2); 11th Cir. L.R. 26.1-1(a)(1); 11th Cir. L.R. 26.1-2(a); W. Va. Code Ann. § 46A-6N-6 (2019); Wis. Code § 804.01(2)(bg) (2018).

Courts permit discovery of third-party litigation funding in putative class actions as relevant to the adequacy and fitness of putative class representatives and class counsel. *See, e.g., Gbarabe v. Chevron Corp.*, No. 14-cv-00173-SI, 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016) (granting defendant's motion to compel production of plaintiff's litigation funding agreement and related documents as relevant to assessing class counsel's ability to adequately represent the putative class); *Haghayeghi v. Guess?, Inc.*, No. 14-CV-20 JAH (NLS), 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016) (finding litigation funding documents "relevant to

---

[4] *See* ABA Report to the House of Delegates RE: Best Practices for Third-Party Litigation Funding, Aug. 2020, at p. 3 (citation omitted).

whether Plaintiff would adequately protects the interests of the class"); *Burkhart v. Genworth Fin., Inc.*, No. 2018-0691NAC, 2024 WL 3888109, at *4 (Del. Ch. Aug. 21, 2024) (ordering production of unredacted litigation funding agreement in class action because of "legitimate concerns that counsel could face a conflict of interest"). This discovery is particularly relevant given the extraordinary circumstances present here where Mr. Kanovitz and his firm are accused of fraud and theft, including $1 million that was allegedly diverted to pay off Loevy + Loevy debt owed to LFG. *See, e.g., Jayme Herschkopf, Fed. Jud. Ctr., Third-Party Litigation Finance* 9 (2017) at p. 11 ("[I]f the circumstances of the litigation raise concerns about the adequacy of counsel, the court may grant discovery."); Maya Steinitz, *Incorporating Legal Claims*, 90 NOTRE DAME L. REV. 1155, 1168 (2015) ("[T]he introduction of a financier into the attorney-client relationship can produce conflicts or reinforce existing ones."); J. Maria Glover, Alternative Litigation Finance and the Limits of the Work-Product Doctrine, 12 N. Y. U. J .L. & Bus. 911, 935 (2016) ("[O]ne could imagine any number of legitimate concerns about the ways in which litigation funding could alter the incentives of plaintiffs' counsel and potentially create conflicts between its loyalty to the class and its contractual obligations to the litigation funder.").

Moreover, the Northern District of California, where the Plaintiffs were required to file their motion to quash the Subpoena, has adopted a standing order requiring disclosure in all class actions of "any person or entity that is funding the prosecution of any claim or counterclaim." *See* Standing Order for All Judges of the North District of California, Contents of Joint Case Management Statement, ¶17 (N.D. Cal. Nov. 30, 2023).

Any financing arrangement between Loevy + Loevy and LFG, including the facts alleged in the AFC Action related to such arrangement(s), are also relevant to Mr. Kanovitz and his firm's adequacy, suitability and fitness to serve as proposed class counsel. For example, the "tens of millions of dollars" in controversy in the *Advanced Flower Action* dwarfs the amount in controversy in this action by many times over. The prospect of insolvency for Loevy + Loevy in the event of an adverse outcome in the *Advanced Flower Action* raises potentially disabling conflicts. As noted by the New York Bar Association Committee on Professional Ethics, Formal Opinion 2018-5, "a law firm whose debt exceeds its incoming legal fees and other assets may be unable to meet its financial obligations. One might therefore argue that any creditor has an incentive to encroach on lawyer independence and that there is no reason to single out those particular creditors who have a stake in lawyers' fees in particular matters." Id. at p. 6, n.11.

Given the grave and highly detailed allegations of fraud and theft, and the magnitude of the "tens of millions of dollars" allegedly stolen by Mr. Kanovitz and his firm, the outcome of the *Advanced Flower Action* could potentially terminate Mr. Kanovitz's and Loevy + Loevy's licensure to practice law and/or financial ability to support and continue this action. Accordingly, the discovery sought is relevant and appropriate. *See, e.g., In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F.Supp.3d 612, 615 (D.N.J. 2019) ("[D]iscovery will be [o]rdered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or not being protected, or conflicts of interest exist."). At a minimum, defending the *Advanced Flower Action* will be a significant resource drain and distraction for Loevy + Loevy and Mr. Kanovitz and Mr. Loevy, calling into question their ability to adequately support and prosecute this action.

Finally, the Motion makes several unsworn assertions that lack any evidentiary support and are belied by the record. For example, the Motion claims (without support) that LFG "lent money used to fund the cannabis company owned by Plaintiffs' counsel." ECF 400 at 2. But LFG is not in the business of lending money to cannabis companies. Instead, LFG is a "Registered Investment Advisor and California Licensed Lender" engaged exclusively in "***third-party litigation funding***."[5] Moreover, the *Advanced Flower* Action complaint alleges that Kanovitz and Loevy "used nearly $1 million in AFC loan proceeds ($966,762) to pay off a debt ***owed by their law firm*** to a litigation finance company and having nothing to do with [their cannabis business]." *See Advanced Flower Capital, et al. v. Kanovitz, et al.*, Case No. 1:25-cv-02996-PKC (S.D.N.Y.), Amended Complaint, ECF 24, at pp. 2-3. At a minimum, the Micromobility Defendants are entitled to test these conflicting representations.

Plaintiffs' remaining contentions are either irrelevant or unavailing. Plaintiffs argue that the Subpoena violates Mr. Kanovitz's privacy interests. ECF 400 at p. 6. Putting aside that Plaintiffs lack standing to assert Mr. Kanovitz's "privacy" interests, Plaintiffs overlook the fact that the *Advanced Flower Action*, both the original and amended complaints and all other filings are matters of public record. Further, unlike Plaintiffs who served ***nearly one-hundred non-party subpoenas*** on virtually every professional and personal associate of each of the Micromobility Defendants, the Subpoena included a copy of the Confidentiality Order in this action. Thus, any "privacy" concerns are adequately addressed. Finally, Mr. Kanovitz cherry picks a statement out of context from Mr. Palella's deposition to attempt to attribute an improper motive for the Subpoena. However, taken in context, Mr. Palella's statement was made in response to highly improper, irrelevant and harassing questions by Mr. Kanovitz regarding Mr. Palella's minor children. This was no isolated incident. Mr. Kanovitz's unprofessional conduct throughout this litigation will be the subject of the Micromobility Defendants' fulsome motion to disqualify, if permitted by the Court.

### III. The Case Should Be Stayed While the Court Considers the Micromobility Defendants' Forthcoming Motion to Disqualify Loevy + Loevy

In addition to the above conflicts considerations, the Micromobility Defendants respectfully submit that significant record evidence exists to disqualify Loevy + Loevy from serving as counsel for the putative class. If permitted, the disqualification motion will present evidence of extensive litigation misconduct, including that Loevy + Loevy improperly solicited the plaintiffs in the action, made false and incomplete discovery responses, as well as evidence of separate conflicts arising from Mr. Kanovitz's additional cryptocurrency business called "Jurat." A discussed below, the Defendants intend to file a motion disqualifying Loevy + Loevy and good cause exists to stay the case for at least 60 days so the Court can consider these issues without the Micromobility Defendants having to needlessly incur the substantial costs to retain experts and prepare an opposition to the Plaintiffs' class certification motion. On October 9, 2025 the Micromobility Defendants advised Loevy + Loevy that a motion would be filed seeking to disqualify them from representing the named Plaintiffs and from being class counsel. The

---

[5] https://www.lawfinance.com/about (last visited Oct. 25, 2025).

Micromobility Defendants also offered to stipulate to stay the case until December 31, 2025 (subject to Court approval) so the class could obtain new counsel. The October 9, 2025 letter is attached as Exhibit C. Loevy + Loevy has refused to voluntarily withdraw from representing the named Plaintiffs and the class.

The action should also be stayed and class certification be postponed pending determination of the disqualification motion for the additional reason that Plaintiffs' new counsel may seek to certify a different class. Here, Plaintiffs' class certification motion seeks certification for Plaintiffs' RICO claims only. Thus, Plaintiffs have abandoned their securities fraud and other claims altogether. Plaintiffs' class certification motion also makes no distinction between class members who purchased HBZ Coin in the initial coin offering or via a secondary market, provides no relevant time period, makes no showing of reliance, and includes no model for measuring alleged damages, among many other defects. These are not likely mere oversight. There are potential conflicts among respective class members who purchased at different times in different forums and in different manners, which separately could render the proposed class representatives and class counsel conflicted and disqualified. *See*, *e.g.*, *Moore v. Margiotta*, 581 F. Supp. 649, 653 (E.D.N.Y. 1984) ("On its face the representation of the two classes of plaintiffs [with conflicting theories of recovery] raises the specter of conflicts . . . ."). Also, at deposition, the Plaintiffs could not identify the defendants in this case or the claims at issue, nor had they ever directly spoken with or met any of the co-plaintiffs. Thus, there is a significant risk that any new counsel would seek to cure these and other defects or attempt to certify a different class. The Micromobility Defendants would be significantly prejudiced if required to expend resources, including experts, in opposing a motion that may be superseded altogether.

Disqualification of an attorney is a matter which rests within the sound discretion of the court. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). "[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). Courts consider the New York Rules of Professional Conduct ("RPC") and the ABA Model Rules of Professional Responsibility for guidance in deciding a disqualification motion. *Id.* at 132; *see also Tufamerica, Inc. v. Codigo Music LLC*, 2013 U.S. Dist. LEXIS 65777 (S.D.N.Y. May 7, 2013).

While "motions to disqualify are subject to a high burden of proof," *Hickman v. Burlington Bio–Medical Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y.2005); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978), "[u]nder the restrained approach adopted by the Second Circuit, relief will be granted if the representation will involve the lawyer in representing differing interests or a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests. Indeed, "an attorney may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligation of the professional relationship." *See Galindo v State Farm Fire & Cas. Co.*, 2014 N.Y. Misc. LEXIS 1816, 9-11 (Sup. Ct. Apr. 15, 2014) (*quoting Roddy v. Nederlander Producing Co. of America, Inc.*, 96 A.D.3d 509 (1st Dept. 2012)). As explained in

*Galindo* an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests. *Id.* (*citing Flores v. Willard J. Price Assocs.*, LLC, 20 A.D.3d 343 (1st Dept. 2005). At bottom, "any doubts are to be resolved ***in favor*** of disqualification." *Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir.1980), vacated on other grounds and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981).

A violation of Rule 1.7(a), where an attorney puts his or her own personal interests above the plaintiffs' interests has resulted in disqualification of counsel. *See Crews v. County of Nassau*, 2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007); *see also Galindo*, 2014 N.Y. Misc. LEXIS 1816. Rule 1.7(a)(1) of the RPC instructs counsel shall not represent a client if a reasonable lawyer would conclude that either the representation will involve the lawyer in representing differing interests.

Disqualification should be closely considered in the class action context because the putative class counsel has a greater responsibility to absent class members who may have less opportunity to influence litigation strategy or participate in the proceedings. This heightened concern is reinforced by the prerequisite imposed by Rule 23(a)(4) that the court examine and assess the adequacy of class counsel. *See* Fed.R.Civ.P. 23(a)(4). Rule 23 and related jurisprudence cautions against permitting potential conflicts of interest and demands unassailable loyalty and vigorous prosecution on behalf of the proposed class. "The court must be sensitive to the responsibility of class counsel to absent members, in particular when representing future interests, and will not countenance even the appearance of divided loyalties." *In re Joint E. & S. Dist. Asbestos Litig.*, 133 F.R.D. 425, 430 (E.D.N.Y. 1990) (citing *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1340 (S.D.N.Y.1988)). "'Because class counsel seeks to determine the rights of absent putative class members, a court must carefully scrutinize the adequacy of representation.'" *Garcia De Leon*, *supra*, 2022 WL 2237452, at *15 (S.D.N.Y. June 22, 2022), quoting *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602-03 (S.D.N.Y. 1992). To that end, the court "'may consider the honesty and integrity of the putative class counsel, as they will stand in a fiduciary relationship with the class.'" *Id.*, quoting *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010).

This heightened scrutiny standard in the class action context is only further amplified by the alleged fraud and theft by Mr. Kanovitz and Mr. Loevy via their law firm Loevy + Loevy, which raise serious potential ethical and professional violations. *See*, *e.g.*, *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir.1992) ("A 'district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it.'") (internal quotation and citation omitted). Coupled with the magnitude of damages alleged in the *Advanced Flower Action*, there is serious doubt whether Loevy + Loevy will continue to exist or even have the resources to continue this litigation. To provide the Court with a complete record, the Court should permit the Micromobility Defendants to file a comprehensive motion supported by evidence because disqualification should be decided "only after a painstaking analysis of the facts and precise application of precedent." *Board of Ed. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979), citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir.1977).

9

If permitted, the proposed motion to disqualify Loevy + Loevy will also include a litany of other misconduct by Plaintiffs' counsel, including agreements and representations by counsel that are subsequently disclaimed; that an employee of Mr. Kanovitz's cannabis company regularly posts "information" about this action to a public Telegram channel comprised of absent putative class members without disclosing her association with Mr. Kanovitz and Mr. Loevy; that the named Plaintiffs testified that Mr. Kanovitz did not provide copies of the Micromobility Defendants' Rule 68 offers of judgment or the Micromobility Defendants' written settlement offers addressed directly to them, among other failings.

### III. Alternatively, if the Court Does Not Stay the Action Pending Consideration of the Disqualification Motion, the Court Should Extend Certain Dates in the Case Management Plan

On July 18, 2025, the Court granted Plaintiffs' request for a 60-day extension to the deadline for filing their class certification motion (ECF 384), which was subsequently filed on September 30, 2025, along with Plaintiffs' untimely expert disclosures. ECF 397-399. However, Plaintiffs' extension request (ECF 374) and the Order granting the extension (ECF 384) failed to provide proposed revised dates for the other deadlines related to their class certification motion in the Scheduling Order. These overlooked dates include the date by which Defendants would have to disclose their expert reports, make retained experts available for deposition, or file their opposition, or the date for Plaintiffs to file any reply. The Scheduling Order also provided that Plaintiffs were required to disclose their expert reports two weeks ***before*** their class certification motion but Plaintiffs made those disclosures on September 30, 2025, the same day they were required to file their class certification motion.[6]

Plaintiffs' failure to provide alternative due dates for expert disclosure and the Defendants' opposition to the class certification motion threw the case management plan's prior schedule into disarray. After the Plaintiffs were granted an extension to file their class certification motion counsel, counsel for the Micromobility Defendants and Plaintiffs met and conferred about deadlines for Defendants' opposition to the class certification motion, Defendants' expert disclosures, and expert depositions. During that discussion, Mr. Kanovitz agreed that an equivalent 60-day extension to the deadlines for Defendants to disclose their expert reports and to file their opposition to class certification was appropriate. The Micromobility Defendants explained that an extension was necessary and appropriate due to the complex issues raised in the Plaintiffs' class certification motion, the number and variety of experts disclosed by Plaintiffs, and the novelty of issues raised (e.g., supposition of what the SEC might do if certain disputed facts

---

[6] The Micromobility Defendants contend that Plaintiffs' expert disclosures were untimely because they failed to seek an extension of the due date for their expert disclosure prior to the time the original due date expired and reserve all rights to seek to exclude the testimony on that basis as well as *Daubert* grounds. See the Micromobility Defendants' opposition to Plaintiffs' letter request seeking an extension of the deadlines regarding Plaintiffs' motion for class certification ECF 378 at 3-4; and the Micromobility Defendants request for reconsideration of the Court's Orders granting Plaintiffs' request to extend the deadline to file their class certification motion. ECF. 379 at 2]

10

were assumed in favor of Plaintiffs). The parties also agreed that the proposed extension should take into account the upcoming holidays and agreed that the parties should consider dates in early 2026 to avoid interfering with holiday plans and unavailability of experts. Following the meet and confer, counsel for the Micromobility Defendants provided a proposed schedule consistent with he parties' prior agreements. However, Plaintiffs reneged on their prior agreement of at least a sixty-day extension and apparently are willing to agree to only a significantly shorter period of time. *See* correspondence among counsel attached as Exhibit D.

Accordingly, the Micromobility Defendants respectfully request that the Court modify the Case Management Plan as follows:

1. Deadline for Defendants to depose Plaintiffs' experts: November 21, 2025.

2. Defendants' expert disclosures pursuant to Rule 26(a)(2): November 21, 2025.

3. Deadline for Plaintiffs to depose Defendants' experts: January 15, 2025.

4. Deadline for Defendants' oppositions to class certification: January 30, 2026.

5. Requests for admissions to be served by January 30, 2026.

6. Plaintiffs' reply in support of class certification: February 14, 2026.

The Micromobility Defendants have conferred with Defendant Skrill USA Inc.'s ("Skrill") counsel and Skrill agrees to the above schedule.

**Conclusion**

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' motion to quash the Subpoena and stay the case for 60 days to permit additional time for Defendants to file a motion to disqualify Loevy & Loevy (or, alternatively, modify the Case Management Plan in accordance with the dates set forth above).

Respectfully submitted,

| /s/ Robert G. Heim | /s/ Benjamin Galdston |
|---|---|
| Robert G. Heim | Benjamin Galdston |
| TARTER KRINSKY & DROGIN LLP | OMNUM LAW APC |
| 1350 Broadway | 4350 Executive Drive, Suite 350 |
| New York, NY 10018 | San Diego, CA 92121 |

*Counsel for the Micromobility Defendants*

cc: All Counsel of Record (via ECF)