

311 N. Aberdeen Street
Chicago, Illinois 60607
(312) 243-5900
www.loevy.com

October 29, 2025

**Via CM/ECF**
United States District Court
Southern District of New York
Honorable Judge P. Kevin Castel
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

RE: <u>Barron et al., v. micromobility.com Inc., et al.</u>, No. 20-cv-4703: Plaintiffs' Opposition to Defendants' Motion to Stay Case or Extend Schedule by Three Months.

Dear Judge Castel:

  The micromobility.com Inc. Defendants ("Defendants") responded to Plaintiffs' letter brief seeking leave to quash a subpoena, Dkt 401, but also addeed their own affirmative motions to stay the case or, alternatively, to extend their deadline by 90 days. Dkt. 402. Plaintiffs are cognizant that the Court does not favor replies on letter briefs, so, to be clear, Plaintiffs are writing only to respond to the new motions Defendants joined in their response.

**1. Background**

  Defendants throw around many allegations which they say will justify disqualifying Loevy & Loevy. Without giving credence to their litany, what stands out is that they are all matters courts consider under Rule 23(g), *i.e.*, in Defendants' Response to Class Certification. The only difference between a motion to disqualify and brief responding to a class certification is the due date: Defendants' response is due this week, while their announced disqualification motion supposedly merits at least a 60-day stay. So Defendants' letter, with all its mudslinging, is just a roundabout way of seeking a very long extension, brought at the last minute, and without a mea culpa.

  Defendants' inability to move for an extension forthrightly stems in part from the strategic choices they made this past summer when the Court granted Plaintiffs' request for an extension to file their class certification motion until September 30. July 10 Order, Dkt. 377. Instead of asking the Court at that time to also extend the deadlines they now seek to stay, Defendants chose to urge the Court that it was now too late for Plaintiffs to relying on experts at class certification at all. And they did so *thrice* while the Court stood by its July 10 Order. (Dkts. 378, 379, 388). After Defendants made their third request to bar experts, the Court ended it by scheduling Defendants motion to bar and class certification response for October 29. August 10 Order, Dkt. 393. So Defendants got what they wanted (no matter how misguided their premise). Defendants' current Letter states that Plaintiffs "threw the case management plan's prior schedule into disarray" and that the Court "overlooked" the need to alter the deadlines they wish to stay. Dkt. 402 at 10. But Defendants' three

prior letters (totaling over 21 single-spaced pages) urging the Court to bar the experts without asking for scheduling relief that would have mooted their argument tell the true story. Dkts. 378, 379, 388.

Defendants' request is also about more than just an extension, it is about avoidance. Defendants' predicate for their stay is that they need to get a return on Palella's subpoena to Law Funding Group (LFG) first. Putting aside the fact that Defense Counsel waited until less than two weeks were left in discovery to serve the subpoena, Plaintiffs offered Defendants a 21-day extension, which would be ample to sort out the time crunch caused by Defense Counsel's delay in service. Dkt. 402-4 at pdf pages 2-3. They turned it down (and also neglected to inform the Court of the offer as required by your Individual Practices). So, Defendants' request to stay or push the dates out until February is not really about the subpoena. Rather, it is their attempt at a reprieve. They have no good answer to the evidence of their criminal enterprise Plaintiffs provided at class certification, and so they are doing whatever they can to avoid a court ruling about it, including baseless stays, character assassinations, and related misrepresentations to the Court.

**2.     Defendants can move to disqualify Loevy & Loevy (now, later, or never) but the case should not be stayed while they do so**

Distilling Defendants' rhetoric down to actual stated justifications for their request, there are five. None demonstrate a logical connection to staying the case.

(1) Two of the Loevy & Loevy lawyers with appearances on this case have been sued in an unrelated business dispute, not involving their practice of law. Although these are just allegations, Defendants argue the business dispute could nevertheless distract the lawyers' attention from this case (but do not have a single example of it interfering thus far nor a single case disqualifying a lawyer for being involved in other litigation that also requires his attention). Defendants are perfectly capable of raising this argument in their class certification response now. The justification has no relationship to a stay of the case.

(2) The fact that Loevy & Loevy took a loan from LFG supposedly gives Defendants concern that the firm may not be sufficiently well-heeled to fund the case (they cite no actual example of the firm skimping on this case in last five years nor address the fact that the firm just flew four class reps to New York for their depositions and disclosed five expert reports). Putting aside the problematic idea that class action defendants have a roving commission to investigate an attorney's finances whenever they seek appointment to represent a class, the LFG subpoena in not calculated to shed light on Loevy & Loevy's ability to fund this case. A subpoena to Loevy & Loevy or its accountants is needed for that. So, Defendants' financial wherewithal argument is a makeweight that does not actually relate to a request to stay.

(3) An allegation in the business dispute, having nothing to do with the two lawyers' work as attorneys, is that they caused a non-party cannabis company to repay LFG for a loan to Loevy & Loevy using money that should have been credited to Advance Flower Capital (AFC) instead. The LFG subpoena presumably would demonstrate the payment AFC alleges, but it cannot establish that the payment violated the AFC loan agreements, an

allegation AFC has declined to prove.[1] So the subpoenaed documents would not establish misconduct by the two attorneys. Without intending to give credence to Defendants' theory that a business dispute not involving the practice of law can disqualify a lawyer from representing a class, the subpoena cannot prove the allegations in the business dispute, and thus it is not even an arguable reason to stay the case.

(4) Defendants speculate that because LFG loaned money to Loevy & Loevy, it may have entered into an unethical loan agreement giving it control of this class action. Again, without giving credence to Defendants' theories, Plaintiffs offered them a 21-day extension for their Counsel to resolve the subpoena issue, even though Defendants lack good cause having waited until the end of fact discovery to serve it). Lack of good cause aside, there is at least a logical relationship to a brief extension to address the subpoena, but not to staying the case.

(5) Plaintiffs' counsel are guilty of widespread miscellaneous misconduct and conflicts of interest having beyond the business dispute allegations (of which Defendants attach no proof). Again, there is no logical connection to the stated need for a stay. Defendants could present all of their supposed evidence in their class certification response *today* without delay.

Additionally, Defendants fail to address the requirement to show good cause for a stay. Clinton v. Jones, 520 U.S. 681, 706-08 (1997). Good cause is lacking for multiple reasons.

**First**, Defendants can pursue a motion to disqualify in parallel with the case deadlines as currently scheduled. Their twisted justification for staying the case instead of responding to class certification is that if the Court were to find Loevy & Loevy unsuitable, and if new counsel comes in, that new counsel might hypothetically want and be allowed to hire new experts and redo class certification briefing, in which case Defendants would have wasted their time and money. Dkt. 402 at 8. Defendants heap speculation upon speculation: that Defense Counsel can actual sign the as-yet-unfiled motion to disqualify consistent with their Rule 11 duties, that their motion would be granted, that the Plaintiffs would find new counsel, that new counsel would want to scrap the highly considered brief Loevy & Loevy already filed, that new counsel would want to hire and pay different experts, that the Court would allow new counsel a do over, etc., etc., etc. Defendants' speculative argument could apply any time a defendant wants to challenge counsel's adequacy under Rule 23(g), yet courts do not stay cases for such challenges. They consider the challenges as part of the defendants' overall class certification response. Defendants' speculation is not good cause for a stay.

**Second**, Defendants offer no excuse why they failed to serve LFG sooner than days before the end of discovery. They cannot demonstrate good cause to alter the Case Management Order if they did not act diligently, particularly when they dodge even acknowledging the issue.[2]

---

[1] AFC abandoned the claim when tasked to prove it in the DNJ preliminary injunction proceedings. See Reply to Motion to Dismiss at 2, 25-cv-02996-PKC, Dkt. 36 (SDNY Sept. 12, 2025); Appellants' Br., Hayden Gateway LLC v. Advanced Flower Cap. Inc., No. 25-2061, Dkt. No. 23 (3d Cir. July 1, 2025).

[2] Defendants also failed to comply with the Individual Practices. Section I(C)(iv) requires Defendants to state in their letter "whether the adversary consents to the request and, if not, the reasons given by the adversary for declining to consent." Defendants argue to stay the case or extend briefing into February of next year while omitting Plaintiffs' offer of a 21-day extension and the reasons they gave why 21-days is ample. Section I(C)(vi) provides that "a request for an extension of the schedule for completion of discovery shall attach a

**Third**, it strongly appears the subpoena to LFG is invalid, mooting any request for a stay to enforce it. Fed. R. Civ. P. 45(a)(3) requires: "The clerk must issue a subpoena.... An attorney also may issue and sign a subpoena *if the attorney is authorized to practice in the issuing court*." (emphasis added). If the attorney signing a subpoena is not admitted in the issuing court, the subpoena is void. Narcoossee Acquisitions, LLC v. Kohl's Dep't Stores, Inc., No. 6:14-CV-203-ORL-41TB, 2014 WL 4279073, at *2 (M.D. Fla. Aug. 28, 2014) ("Ross alleges, and Kohl's has not disputed, that the attorney who issued and signed the subpoena is not admitted to practice in the [district from which the subpoena issued]. Consequently, Kohl's lawyer did not have authority to issue the subpoena from that court.") Mr. Galdston did not seek admission *pro hac vice*. See Dkt. 327 (Galdston appearance). Enforceability therefore turns entirely on whether he is admitted to SDNY. Plaintiffs' Counsel contacted the SDNY help desk which stated that Mr. Galdson is not admitted.

Noting these concerns, LFG's General Counsel wrote Mr. Galdston asking if he is admitted to the SDNY and demanding that he withdraw the subpoena if not. See Declaration of Stephanie Boone and attached email chain, Exhibit A hereto. In response, Mr. Galdston claimed that he is admitted to SDNY but refused to provide proof. Id. ("I don't need to supply you with "evidence" of my admission to any court."). LFG continued pressing him to withdraw the subpoena:

> Ben – We have verified with the SDNY that you are not admitted in that Court, which means that you intentionally misrepresented your admission status to me yesterday (See below: "Stephanie, you are misinformed. I am admitted in the SDNY…"). Please withdraw the subpoena immediately. All rights and remedies are reserved.

Id. Mr. Galdston then emailed a "screenshot" as proof of his SDNY admission, but the screenshot merely shows some court website hyperlinks, including SDNY's. Id. The screenshot is also bizarrely cropped such that no other information appears, not even his name. Id. When LFG asked him to share the URL from which he made the screenshot, Mr. Galdston did not reply. Id.

Therefore, it seems highly likely that Mr. Galdston is not admitted in SDNY, meaning his subpoena is invalid and the whole basis of Defendants' request to stay the case, lacking.[3]

---

proposed Revised Case Management Plan and Scheduling Order (reflecting actual dates which are business days). It should also include a request to adjourn the next conference to a date at least 14 days after any proposed date for the close of fact discovery."). Defendants did not provide those either.

[3] If Mr. Galdston practiced in this case without being admitted, it raises issues beyond the scope of this letter. Plaintiffs will assess and address these later. Should Mr. Galdston seek to appear *pro hac vice*, Plaintiffs request an opportunity to file a response in order to fulsomely apprise the Court of Mr. Galdston's other concerning conduct. See Sedona Corp. v. Ladenburg Thalmann & Co., No. 03 Civ. 3120 (KMW) (THK), 2003 WL 22339357, at *3 (S.D.N.Y. Oct. 14, 2003) (""[a]dmission *pro hac vice* is not a right but a privilege"). See also Ascento Cap., LLC v. Filipiak, No. 24 CIV. 6392 (AT) (GS), 2024 WL 4536667, at *2 (S.D.N.Y. Sept. 30, 2024) ("Attorneys who do not instill confidence that their representations may be relied upon do not merit the privilege of appearing *pro hac vice* before the Court."); Ptak Bros. Jewelry v. Ptak, No. 06 CIV.13732(DC), 2009 WL 807725, at *10 (S.D.N.Y. Mar. 30, 2009) ("Stahl's application for admission pro hac vice is denied.... He filed an appearance in the case, purporting to represent defendants, even though he was not a member of the Bar of this Court, and was not even a member in good standing of the Bar of the State of New York.").

**Fourth**, even if the subpoena were valid, Defendants' argument that they need a general stay is excessive in the extreme. Plaintiffs offered to not oppose a 21-day extension. Dkt. 402-4 at pdf pages 2-3. The 21 days should be ample for Defendants to resolve the subpoena dispute and is far superior to a general stay of the case.

**Fifth**, the subpoena is a fishing expedition which, even if allowed, is hardly good cause for a stay. The fact that two of the firm's partners were sued in part over repayment of a loan from LFG provides no basis for Defendants to conclude that the firm granted LFG an interest in this class action, much less that LFG would risk its money using unethical loan structures that could trigger non-enforcement. Defendants offer no cogent explanation for their speculation.

**Sixth**, LFG has no interest in this case, much less an unethical one. Loevy & Loevy, has a recourse loan with LFG secured by all of the firm's accounts receivable. Exh. A, Boone Declaration ¶ 3. It does not give LFG an interest in the firm's cases, and repayment is owed regardless of the outcome on any or all of them. Id. The New York City Bar Association Ethics Opinion Defendants cite recognizes that such agreements are ethical and do not raise conflicts. Formal Option 2018-5 ("As discussed below, the fee-sharing rule does not forbid a traditional recourse loan requiring the lawyer to repay the loan at a fixed rate of interest without regard to the outcome of, or the lawyer's receipt of a fee in, any particular lawsuit or lawsuits.") (available at https://www.nycbar.org/wp-content/uploads/2023/05/2018416-Litigation_Funding.pdf"). See also Kaplan v. S.A.C. Cap. Advisors, L.P., 2015 WL 5730101, at *3-*5 (S.D.N.Y. Sept. 10, 2015) (where class action defendants posited numerous potential conflicts from a litigation funding agreement, strikingly similar to the ones raised here, court found the reasons speculative and denied production); In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig., 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("[D]iscovery will be Ordered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist. However, no such evidence has been raised by defendants and, to date, the Court has not seen anything of the sort.").

In short, Defendants' 11-page letter about moving to disqualify is merely bluster in hopes of a stay to which they are not remotely entitled and the true purpose of which is stave off the Court's decision on the compelling evidence against them. Defendants can file their motion to disqualify at any time, but the Court should not stay the case. See Fequiere v. Tribeca Lending, 2015 WL 1412580, at *8 (E.D.N.Y. Mar. 20, 2015) ("Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." (cleaned up)); *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged.")

### 3. Defendants' alternative request for an extension also should not be granted

In the alternative, Defendants ask for a 90-day extension, arguing that Plaintiffs already agreed to 60. There was no agreement. The parties discussed a joint motion to extend the deadlines when they met and conferred in mid-September, see Exhibit B hereto, one that would have given Plaintiffs extra time too. But no agreement was reached and Plaintiffs therefore produced all of their expert reports according to the timelines required under the current Case Management Order.

      Given the animosity between micromobility Defendants' Counsel and Plaintiffs' Counsel, the Court can be assured that if an agreement had been reached, there would be a contemporaneous email or letter confirmation, and there is none. Moreover, when Mr. Galdston wrote five weeks later claiming a prior agreement and Plaintiffs challenged him, the only justifications he could muster were: (1) having seen Plaintiffs' expert reports he wanted to rebut them before responding to class certification, despite his prior strategy to bar them, and (2) there was a dispute over enforcement of the LFG subpoena. Dkt 402-4 at pdf pages 1 and 3. Neither of those facts existed until after the September 18 conference at which Mr. Galdston claims there was a supposed agreement.

      Accordingly, for the foregoing reasons, Defendants motions in their Dkt. 402 letter should be denied. [4]

      Thank you for your time in this matter.

                                                    RESPECTFULLY SUBMITTED,

                                                    s/ Michael Kanovitz
                                                    One of counsel for Plaintiffs

                                                    Michael Kanovitz (*pro hac vice*)
                                                   Heather Lewis Donnell
                                                   Anand Swaminathan
                                                   LOEVY & LOEVY
                                                   311 N. Aberdeen St., 3rd Floor
                                                   Chicago, Illinois 60607
                                                   (312) 243-5900
                                                   mike@loevy.com

---

[4] Mistakenly smelling blood in the water after Defendants' assault on Plaintiffs' Counsel, Skrill wrote the Court to announce that it intends to join a motion to disqualify, sight unseen. Dkt. 403 ¶2. Time will tell if Skrill's counsel goes through with signing onto what Defendants end up filing (if they file at all). For now, Skrill's attempt to lend credibility to the Dkt. 402 letter is hollow and should be given no weight.

Skrill's letter additionally argues that Plaintiffs' class certification motion requires dismissal of Pellegrino (for whom Skrill can have *respondeat superior* liability). Id. ¶3. Skrill misunderstands both the evidence in the record and the applicable standard. Class certification does not embrace the merits beyond those intertwined with Rule 23 questions. E.g. Hanks v. Lincoln Life & Annuity Co. of New York, 330 F.R.D. 374, 379 (S.D.N.Y. 2019) (Castel, J.); id. at 383 ("Whether the contract is ambiguous goes to the merits of the dispute and is not resolvable at the class certification stage."). There is ample evidence of Pellegrino's and Skrill's liability, but that evidence does not belong in Plaintiffs' class certification brief, which already had enough to cover in 25 pages. Therefore, no inference should be drawn that Skrill or Pellegrino deserve to be dismissed.