**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RYAN BARRON, ET AL. | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | 1:20-cv-4703 (PKC) |
| v. | ) | |
| | ) | |
| MICROMOBILITY.COM, INC. ET AL. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## DECLARATION OF MICHAEL KANOVITZ

MICHAEL KANOVITZ, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury the following:

1. I am over 18 years of age and have personal knowledge of the matters stated below.

2. Defendant Skrill USA Inc.'s Request to Admit No. 16 states: "Admit that Skrill USA was not involved in Helbiz's alleged efforts to fabricate evidence to the SEC." Its Request to Admit No. 22 states: "Admit that Skrill USA was not involved in Helbiz's alleged manufacturing of false evidence." Skrill served these requests following briefing on class certification, which it specifically references in its instructions. Dkt. 426-1 at 2 ("'Proposed Class' means the class Plaintiffs seek to certify for their RICO Claims.").

3. The requests are worded similarly but not the same. Assumedly, Skrill intended these separate requests to address different facts. Otherwise, the second request would have been improperly redundant. I did not believe that Skrill intended to serve redundant requests and so I took them to mean different things.

4. I understood "efforts to fabricate evidence to the SEC" to refer to the years-long efforts that Helbiz took to mislead the SEC into believing that the coin sales occurred in Singapore rather than in the United States by registering the sham Singapore corporation, and

1

"manufacturing of false evidence" to refer to the three manufactured documents discussed at pages 16-17 of Plaintiffs' Memorandum in Support of Class Certification, which were created out of whole cloth using photoshop and similar methods discussed therein: the HBZ-ICO Deck, the Cynopsis Letter, and the ICO Purchaser Spreadsheet.[1] *See also* Dkt. 398 at 15 (immediately preceding the discussion of the three documents, "Defendants *manufactured* false evidence in violation of 18 USC § 1512(c)") (italics added). I believe that my understanding was both reasonable and in fact what Skrill intended when it served the two differently-worded requests.[2]

5.      Although the verbs "fabricate" and "manufactur[e]" can be used interchangeably, they each have multiple meanings and can be used to mean different things. In my understanding, "manufacture" is most commonly used to connote the making of a thing. *See* https://www.oed.com/dictionary/manufacture_v?tab=meaning_and_use#37989421 (first listed definition, "To make (a product, goods, etc.) from, of, or out of raw material; to produce (goods) by physical labour, machinery, etc., now esp. on a large scale.").

6.      "Fabricate" can be used similarly, but it is also common to use the term fabricate to mean telling a false account of events. *See Black's Law Dictionary* (12th ed. 2024) (defining "fabricate" to mean to "construct, or build" but also "to create a plausible version of events that is advantageous to the person relating those events. The term is softer than lie. See LIE, vb.(1).").

7.      Further differences are that Request 22 is addressed specifically to the act of "manufacturing" (stated as a gerund) and specifies the manufacture of "false evidence," while Request 16 uses the scope broadening "efforts to" and suggests an element of communication in that the fabrication of evidence is "to the SEC" without specifying that the evidence itself was

---

[1] The Marques expert report also explains that the ICO website screens displayed in the Deck were reconstructed from a Sketch file Hannestad had created and used for the live ICO website. Dkt. 399-20 at 4.
[2] In its motion regarding the Requests, Skrill did not argue that Plaintiffs' answers to Requests 16 and 22 were inconsistent. This further supports my belief about Skrill's different intents for the two separate Requests.

"false."

8.      The Memorandum lists three specific documents and discusses in depth how Hannestad and Palella manufactured them.

9.      HBZ-ICO Deck. The Memorandum discusses the manufacture of the HBZ-ICO Deck at 16: "Plaintiffs' computer science expert analyzed the actual website files from Hannestad's ESI to reconstruct that screen . . . the extraction [by the forensic document examiner] shows the full computer screen, and it says 'Jonathan Hannestad' top right, not HMSP . . . [t]he extraction also shows Hannestad was running Photoshop when he took the screenshot." *See also Id.* (citing Palella's message sending the deck to another Helbiz employee stating "We did a great job!"). Based on the evidence, I concluded that Hannestad and Palella themselves are the ones who manufactured the HBZ-ICO Deck document and so I drafted Plaintiffs' admission to Request 22 accordingly.

10.     Cynopsis Letter. Similarly, the Memorandum explains that the Cynopsis Letter was first created eight months after its purported date, on an operating system that was not released until three months after its purported date, and that the document includes a non-standard font that Hannestad possessed and used when creating another document. *Id.* at n. 5 ("Hannestad used that exact same idiosyncratic font to sign his name months later."). Accordingly, I concluded that Hannestad manufactured this document himself and drafted Plaintiffs' admission to Request 22 accordingly.

11.     ICO Spreadsheet. In discussing the ICO Spreadsheet the Memorandum states that it is "another fake" and cites affidavits from coin purchasers who can attest firsthand to the fact that the information in it identifying the purchasers and their residencies is completely made up. Dkt. 398 at 17. The Groshong expert report explains that the spreadsheet was likely created by downloading a list of anonymous transaction data from a public source like Etherscan,

3

manipulating the data, and then adding fake purchaser-specific columns for the wallet addresses. *See* Groshong Report, Dkt. 399-7 at 29-30. Additional evidence proves that Hannestad controlled the ICO signup database which contained the actual purchaser information. *See, e.g.*, Dkt. 398 at 15 (citing an "email showing that Hannestad controlled the ICO signups database"). Accordingly, I concluded that Hannestad manufactured the ICO Spreadsheet document himself and drafted Plaintiffs' admission to Request 22 accordingly.

12.     Request 16 refers to Helbiz's "efforts" (which is broader than the discrete manufacture of an item) to fabricate evidence "to the SEC" which, again, can connote the construction of a misleading version of events.

13.     Plaintiffs' Memorandum in Support of Class Certification lays out a multiyear effort by Helbiz to mislead the SEC into believing that the coin was issued in Singapore. There was an actual corporation which they registered in Singapore and an actual opinion letter from a Singaporean attorney. Dkt. 398 at 7-10. Those things were not manufactured as such, unlike Hannestad's use of photoshop and other tools to manufacture the three specified documents out of whole cloth. But the incorporation and opinion letter were part of the effort to fabricate the overall sham story which Helbiz used to convince the SEC that the coin issuer was in Singapore. *Id*. *passim*.

14.     Helbiz's efforts to spin the sham story started before the ICO, well predating its manufacture of the three documents, which did not occur until after the SEC's investigation. Events during that pre-investigation time frame provide a basis for a trier of fact to infer that Skrill USA Inc. more likely than not was involved in Helbiz's efforts to create the sham.

15.     In October of 2017, months before the ICO commenced and months before the Helbiz Mobility System PTE Ltd. corporation was incorporated in Singapore, Pellegrino was meeting with Palella, trying to find ways for Skrill to assist Helbiz *Inc.* with the ICO, and

4

arranging for Palella to speak with other Paysafe executives. *See, e.g.*, Dkt. 399-5 at 37 (October 2017 email from Pellegrino to a Paysafe employee Kornitzer asking whether "there [is] anything we can do" to assist the Helbiz ICO). I also reviewed evidence that Skrill has designated as confidential and which I therefore am not attaching, but which leads me to believe that Pellegrino was aware at that time that SEC registration requirements would prevent the coins from being traded.

16.     Nevertheless, after the registration of the Singapore corporation and procurement of the Singapore attorney opinion letter, Skrill (via Pellegrino and others) participated in getting exchanges to list the coin for trading, using the false opinion letter, and then promoted the exchange listings to Skrill's customers to encourage them to trade the coin. *See, e.g.* Dkt. 418-1 at 62:11-25, Dkt. 399-5 at 52-57.

17.     Based on all of the evidence I reviewed, I believed it is probable, but not certain, that Skrill was "involved in" Helbiz's "efforts" to fabricate the story that the ICO occurred in Singapore. Nevertheless, Request 16 seeks an absolute admission of the fact itself rather than of the state of the evidence by which the jury might determine the fact. Accordingly, I drafted Plaintiffs' answer to say that they lacked sufficient information to admit or deny Request 16.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 3, 2026
/s/ Michael I. Kanovitz

5